E O D     AUG 1 3 2002

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 01-31751 |
| | ) | (Jointly Administered) |
| GGSI LIQUIDATION, INC., et al., | ) | Chapter 7 |
| | ) | Hon. Carol A. Doyle |
| | ) | Hearing Date: August 14, 2002 |
| Debtors. | ) | Hearing Time: 10:00 a.m. |

## MOTION OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM (ILLINOIS) AND ITS AFFILIATED LAW PRACTICE ENTITIES FOR ENTRY OF AN ORDER EXEMPTING THE FIRM FROM FILING A FINAL FEE APPLICATION

Skadden, Arps, Slate, Meagher & Flom (Illinois) and its affiliated law practice entities ("Skadden, Arps"), Chapter 11 counsel to Goss Holdings, Inc. and Goss Graphic Systems, Inc. (collectively, "Goss"), hereby move (the "Motion") this Court for entry of an order, pursuant to Sections 105(a) and 330 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended (the "Bankruptcy Code"), exempting Skadden, Arps from the requirement to file a final fee application. In support of this Motion, Skadden, Arps respectfully represents as follows:

### BACKGROUND

A.    Overview of the Chapter 11 Filing,
        Retention of Skadden, Arps, and Fee Procedures

1.    On September 10, 2002 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Thereafter,

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

AUG 1 2 2002

KENNETH S. GARDNER, CLERK

the Debtors continued to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.      On the Petition Date, the Debtors filed an application with this Court requesting approval of their retention of Skadden, Arps as their corporate restructuring counsel. On September 20, 2001, this Court entered an order approving Skadden, Arps' retention retroactive to the Petition Date.

3.      Also on September 20, 2001, this Court entered an administrative order authorizing professionals in these cases to file monthly statements of their fees and expenses (the "Administrative Fee Order"). Pursuant to the terms of the Administrative Fee Order, parties in interest had 20 days from the filing of monthly statements to object to them. Absent objection, the Debtors were authorized to pay 90% of the fees and 100% of the expenses requested in such monthly statements.

4.      On February 25, 2002, this Court entered orders converting the Debtors' Chapter 11 proceedings to liquidations under Chapter 7 of the Bankruptcy Code.

5.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      The statutory predicates for the relief sought herein are Sections 105 and 330 of the Bankruptcy Code and Rule 2016(a) of the Federal Rules of Bankruptcy Procedure.

B.      Overview of the Debtors' Proceedings

7.      As of the Petition Date, the Debtors were among the world's leading producers of newspaper and insert printing press systems and also were a major producer of commercial printing press systems.  Specifically, the Debtors were only one of six major global suppliers of newspaper printing press systems, and were the only U.S.-based producer of newspaper printing presses.

8.      Upon commencement of the cases, the Debtors filed a Joint Plan of Reorganization (the "Plan"), agreed to by the Debtors' pre-petition lenders and holders of a substantial amount of the Debtors' unsecured bond indebtedness, that provided for the substantial restructuring of the Debtors' operations and secured and unsecured indebtedness.  The Debtors' intent was to obtain confirmation of the Plan by late 2001 or early 2002 in order to emerge from Chapter 11 during the first quarter of 2002.

9.      However, during late December 2001 and January 2002, the Debtors' business operations and cash situation declined dramatically.  The Debtors were unable to obtain exit financing to sustain their Plan, and the Debtors' debtor-in-possession lenders significantly restricted borrowing availability under the financing

they had provided to the Debtors on the Petition Date. The Debtors therefore

concluded that they could not reorganize their business on a stand-alone basis, and

immediately sought other alternatives, including the expeditious sale of the business

as a going concern or liquidation through conversion to a Chapter 7 proceeding.

10.     The Debtors quickly succeeded in finding a buyer for the business as a

going concern, and on January 31, 2002, the Debtors filed an emergency motion with

this Court requesting approval of the sale of substantially all their assets to an entity

owned by certain holders of the Debtor's pre-petition indebtedness (the "Buyer").

After a contested evidentiary hearing held on February 7, 2002, this Court approved

the sale on the morning of February 8, 2002.

11.     Because the consideration for the acquisition of the assets was a credit

bid of the indebtedness held by the Buyer, the Buyer agreed to provide additional

funds to the estates to pay the costs of administrative claims, including certain

outstanding fees and expenses of professionals representing the Debtors and the

unsecured creditors' committee. In the case of Skadden, Arps, the agreement

obligated the Buyer to pay all outstanding fees and expenses and additional estimated

fees and expenses of Skadden, Arps in the collective amount of $400,000.

12.     Thereafter, the sale to the Buyer closed in accordance with the terms

of the Agreement. At closing, the Buyer funded the administrative expense obliga-

tions, including all outstanding, agreed-upon fees and expenses of the professionals,

including estimated fees and expenses of Skadden, Arps. Skadden, Arps thereafter prepared and submitted to the Buyer a final statement of fees and expenses; paid itself from the funds paid to Skadden, Arps by the Buyer; and remitted to the Buyer an amount equal to the difference between the estimate and the actual fees and expenses incurred, plus the pre-petition retainer that Skadden, Arps had held during the case.

RELIEF REQUESTED

13.    By this Motion, Skadden, Arps requests entry of an order excusing Skadden, Arps from the requirement to file a final fee application in this case. Skadden, Arps understands that the Office of the United States Trustee has no objection to the requested relief.

SKADDEN, ARPS' FEES AND EXPENSES

14.    Between the Petition Date and the closing of the Agreement, Skadden, Arps incurred a total of $1,099,563 in fees and expenses in representing the Debtors. All such amounts have already been paid in full.

15.    In particular, in accordance with the Administrative Fee Order entered in this case, Skadden, Arps filed the following monthly statements with the Court (collectively, the "Monthly Statements"):

| Statement Period | Fees Requested | Expenses Requested |
|---|---|---|
| Sept. 10 - Sept. 30, 2001 | $310,971 | $8,020 |
| Oct. 1 - Oct. 31, 2001 | $338,286 | $29,527 |
| Nov. 1 - Nov. 30, 2001 | $62,666 | $32,796 |
| Dec. 1 - Dec. 31, 2001 | $65,882 | $12,542 |

16.    While the Monthly Statements did not contain narratives summarizing the services rendered, each Statement contained all time entries and detailed summaries of the invoices relating to the expenses sought to be reimbursed.  No party in interest objected to payment of any of the amounts listed in the Monthly Statements.

17.    In accordance with the Administrative Fee Order, on December 5, 2001 and January 14, 2002, the Debtors paid to Skadden, Arps $287,893.90 and $334,054.40, representing 90% of the fees and 100% of the expenses incurred for the statement periods September 2001 and October 2001, respectively.  No other payments were made to Skadden, Arps until the closing of the Agreement.

18.    Upon closing of the Agreement, the Buyer wired to Skadden, Arps an amount equal to $400,000 to pay for outstanding fees and expenses and previously-estimated additional fees and expenses expected to be incurred.  Skadden, Arps thereafter finalized its bill and applied this amount to its outstanding fees and expenses.  Skadden, Arps then remitted to the Buyer an amount equal to $166,129, which was comprised of the difference between Skadden, Arps' initial estimate of outstanding fees and expenses, plus the pre-petition retainer.

19.     On July 17, 2002, the Chapter 7 trustee of the estate of GGSI Liquidation, Inc. sent a notice to parties in interest, including Skadden, Arps, which sets August 30, 2002, as the deadline for parties to file certain claims against these estates with priority under Section 507 of the Bankruptcy Code.  This Motion requests that Skadden, Arps be excused from having to file such a claim, which in the case of Skadden, Arps would be a final request for allowance and payment of compensation and reimbursement of expenses.

BASIS FOR RELIEF

20.     Section 328 of the Bankruptcy Code authorizes a debtor-in-possession to employ an attorney "on any reasonable terms and conditions of employment."  See 11 U.S.C. § 328(a).  Section 330 in turn provides that the Court may award to a debtor's attorney reasonable compensation for services rendered to the debtor.  See 11 U.S.C. § 330(a).  Finally, Rule 2016(a) of the Federal Rules of Bankruptcy Procedure provides that any professional seeking interim or final compensation from the estate shall file an application requesting such relief.  See Fed. R. Bankr. P. 2016(a).

21.     The purpose of these rules is to, among things, afford creditors and other parties in interest an opportunity to review and, if necessary, object to amounts sought by an estate's professionals.  However, this purpose has already been fulfilled in these cases and/or would not be furthered by requiring a final fee application at

this time.  First, Skadden, Arps filed the Monthly Statements with this Court which provided time-ticket and other expense detail, and no party in interest objected to payment of any of these amounts by the Debtors.  Moreover, unpaid amounts represented by these Monthly Statements, plus additional accrued amounts, have been paid already by the Buyer in accordance with the terms of the Agreement and therefore do not involve any use of estate funds.

22.    Indeed, the purpose of the obligation in the Agreement that the Buyer pay all administrative expense claims was to in fact ensure that all administrative expenses that the Debtors had not otherwise paid during the course of the Chapter 11 were paid.  The Debtors had paid a number of such expenses during the Chapter 11, but the Debtors estimated that there were others that had not been paid, including a number of outstanding bills of professionals.  The Agreement therefore effectively indemnified the estate with respect to Chapter 11 administrative expenses.

23.    Section 105(a) of the Code allows this Court to enter any order "necessary or appropriate" to carry out the provisions of the Bankruptcy Code.  Given the unique circumstances of this case - an Agreement that authorized the Buyer to pay outstanding professionals' fees and expenses - an order exempting Skadden, Arps from the final fee application requirements of Section 330(a) and Rule 2016(a) is appropriate.  Skadden, Arps therefore requests that an order be entered exempting it from the final fee application requirement.

WHEREFORE, the Debtors respectfully request that the Court enter an order

substantially in the form of the annexed order (i) exempting Skadden, Arps from the

requirement to file a final fee application and (ii) granting such other and further

relief as is just and proper.

Dated: Chicago, Illinois          SKADDEN, ARPS, SLATE, MEAGHER
       August 12, 2002           & FLOM (ILLINOIS)

Mark A. McDermott (ARDC No. 06209460)
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM (ILLINOIS)
333 West Wacker Drive
Chicago, Illinois 60606-1285
Tel: (312) 407-0700

Attorneys for Debtors and
   Debtors-in-Possession